ENRIQUE CAMPOS DEL TORO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, CARLOS SANTANA BECERRA, JUDGE, Respondent. EDUARDO MORALES MU-ÑOZ, Intervener.

No. 1999.    Argued June 1, 1953.—Decided August 11, 1953.

*Rodríguez Otero & Ramírez, Sebastián García Díaz* and *José Quiñones Elías* for petitioner. *Miranda Esteve & Martínez Álvarez, Jr.*, for intervener, plaintiff in the main action.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

On October 5, 1951, Eduardo Morales Muñoz filed in the former Municipal Court of Puerto Rico, San Juan Section, the present action of unlawful detainer against Enrique Campos del Toro. Plaintiff originally alleged two causes of action against the defendant: first, that the defendant had violated the contract of lease because he had subleased the premises without the previous and written authorization of the lessor; second, for nonpayment of the rent corresponding to the month of August, 1951. It appears from the record that defendant filed his answer in November, 1951, without the exact date being stated.

The parties agreed to the consolidation of the two hearings required by law, and while the hearing was pending the defendant deposited in the office of the clerk of the court, on January 23, 1952, the rent owed to the plaintiff for the months of August to December, 1951, inclusive. On February 7, 1952, the plaintiff requested the withdrawal of the rents so deposited and on February 12 the court ordered that they be delivered to plaintiff. It appears from the record and from the conclusions of the trial court that thereafter the defendant continued to send the rent directly to plaintiff's attorneys.

In view of the deposit of the rent owed and of the decision of the court ordering its delivery to the plaintiff, the latter abandoned the second cause of action for nonpayment and continued the action for violation of the contract, based on the sublease by the lessee without the lessor's permission.

The case was called for hearing in the Municipal Court and the defendant set up a "demurrer for lack of a cause of

action" on the ground that plaintiff had withdrawn the rent deposited by the defendant after the complaint had been filed. The Municipal Court sustained the demurrer and on plaintiff's motion rendered judgment on April 23, 1952.

An appeal was taken to the District Court (now Superior Court) and the defendant raised the same question which he set up in his "demurrer" before the Municipal Court, requesting dismissal of the appeal on the grounds previously stated. A special hearing was held in which both parties introduced evidence and the lower court, in an order to that effect, overruled the question raised by the defendant. The judge concluded that acceptance by the plaintiff of the rent owed did not deprive him of his right to continue the action of unlawful detainer based on the sublease by the lessee without the lessor's permission. The lower court therefore ordered that a day be set to hear the case on the merits but on defendant's motion this Court issued a writ of certiorari to review the order denying the dismissal of the appeal.

Petitioner maintains that the lower court erred "in concluding that the plaintiff had not waived his right to evict based on the sublease of the premises when he accepted the rent deposited by the lessee after the appeal was filed."

The petitioner relies on *Igartúa* v. *Ruiz*, 73 P.R.R. 339, in which it was held that when an action of unlawful detainer is based on the nonpayment of certain rent and plaintiff accepts not only such rent but also the rent which accrued after the breach of the contract, it is tantamount to a waiver of his right to evict.

As we have pointed out, the action of unlawful detainer in the case at bar is based on alleged sublease without the lessor's authorization. Sections 12, 12-A-(3) and 12-B of our Reasonable Rents Act (Act No. 464 of April 25, 1946, as amended by Acts No. 201 of May 14, 1948 (Sess. Laws, p. 578) and No. 24 of August 21, 1948 (Spec. Sess. Laws, p. 238) provide, in part, as follows:

"Section 12.—Regardless of the date of construction or occupancy of both dwellings and business premises, and irrespective of any change of landlord or nominal lessor, the lease contract shall, on the day of expiration agreed upon therein, be compulsorily extended by the lessor at the option of the tenant or lessee, without altering any of the clauses thereof, all of which shall be deemed in force. The foregoing is applicable both to written and oral contracts and the extension shall be understood for the terms fixed by Section 1471 of the Civil Code, but never for a period longer than the duration of the emergency declared in this Act. Said extension is also applicable to leased lots whereon buildings belonging to an owner other than the owner of the lot are erected.

"Section 12-A.—As exceptions to the provisions of the preceding section, the lessor may refuse the extension of the lease contract and, consequently, commence unlawful detainer proceedings only in the following cases:

"1.—.    .    .    .    .    .    .    .

"2.—.    .    .    .    .    .    .    .

"3.—For having the tenant wholly or partly subleased or assigned the use of the leased property, without the lessor's written authorization.

"Section 12-B.—In the case provided for in paragraph 1 of Section 12-A, the lessor may resolve the contract and, consequently, commence unlawful detainer proceedings for nonpayment of the lawful rent to recover possession of the premises or dwelling, even where the term fixed for the duration of the contract has not expired.

"In the cases provided for in paragraphs 2 to 5, inclusive, of Section 12-A, he may not do so until after he has served on the tenant authentic written notice, not less than sixty (60) days in advance of the date of the filing of unlawful detainer proceedings."

In the present case the original contract of lease is still in force and it expires, according to its term, on July 15, 1954. Under § 12 the extension of the contract is compulsory on the lessor on the day of the expiration agreed upon in the lease, and under § 12-A the lessor may refuse to extend when the tenant has subleased without due authorization from the lessor, as is alleged in this case. On first impression and according to those provisions, the lessor could allege the

unauthorized sublease as a ground for unlawful detainer only upon the expiration of the lease term. But under § 12-B the lessor has the right to resolve the contract (that is, even prior to the expiration of the lease term) in case of an unauthorized sublease, but he may not do so until the lessor has notified the tenant, in writing and in an authentic manner, of his intention to resolve the contract, at least sixty days in advance of the date of the filing of the complaint of unlawful detainer.

■ In the light of the Sections above copied and of the allegations contained in the complaint, it is evident that the lessor is entitled to resolve the contract of lease, in harmony with the provisions of §§ 1459 and 1077 of our Civil Code. Section 1459 provides, in part, that the lessor may judicially dispossess the lessee when the latter has committed a violation of any of the conditions stipulated in the contract. It appears from the allegations of the amended complaint in this case and from the contract of lease executed between the parties, and which was admitted in evidence, that the contract has a clause which provides that "the lessee shall not sublease the premises in question without the express and written authorization of the lessor." It is alleged in the amended complaint that the tenant subleased the premises without having previously obtained the written authorization of the plaintiff. Assuming the truth of the allegations of the amended complaint, the action of unlawful detainer therefore issued under the provisions of § 1459 of the Civil Code.

■ Section 1459 should be construed together with § 1077 of the same Code, which provides in part that the right to resolve reciprocal obligations, in case one of the obligors does not comply with what is incumbent upon him, may be understood to be implied. In other words, the action of unlawful detainer based on the violation of the clause prohibiting an unauthorized sublease, contained in the contract is equivalent to an action of resolution of the contract,

pursuant to § 1077. 10 Manresa 647, 648, 5th ed.; 24 Scaevola 605, 606: "The action of unlawful detainer assumes a polymorphous condition 'sui generis,' it adapts itself to the resolution of a contract of lease in force, as well as to the dispossession of the lessee in a lease already expired ... the action of unlawful detainer is resolutory in nature because of the unquestionable influence of the principle announced in § 1124 that the right to resolve reciprocal obligations in case one of the obligors should fail to comply with what is incumbent upon him is understood to be implied."

We are dealing then with a resolutory action. In general terms, the resolution of a contract has a retroactive effect, but this is not so when the contract involved covers successive performances, that is, when the obligation must be executed in a series of acts and not in a single act. Planiol y Ripert, *Tratado Práctico de Derecho Civil Francés*, § 433, p. 607; De Buen y Bonet, *Derecho Civil Común*, p. 467. The lease is a continuous contract since the obligation of the lessor, that is, to supply the lessee with the use and enjoyment of the property, is complied with uninterruptedly, the consideration of the lessee's obligation being the payment of the price of the rent, payments which are continuous and successive and the price of the rent may be demanded in proportion to the enjoyment obtained. A resolutory judgment should not affect retroactively different facts or acts already consummated, when dealing with contracts, such as a lease, where such acts or performances are continuous, repeated and successive. These successive acts should continue having juridical validity for the duration of the contract, until a final judgment is rendered directing the resolution of the contract.

Since a resolutory judgment can not affect retroactively a contract of lease, it may be implied that the contract of lease is valid, according to its terms, from the moment of its execution until even after an unlawful detainer suit is filed,

and during the life of the contract until a final resolutory judgment is rendered. The lessor is bound to allow the lessee to enjoy the property during the time elapsed between the filing of the complaint and the date the judgment resolving the contract becomes final, and the lessee continues under the obligation to pay the corresponding rent. Therefore, the acceptance of the rent by the lessor during the prosecution and pendency of the unlawful detainer suit in the case at bar is an incident of the contractual relation which continues to prevail and is compatible with the continuous existence of the lease contract, until a final resolutory judgment is rendered. The acceptance of the rent is not equivalent, by itself and under the circumstances of the present case, to a waiver of the right to evict nor to an implied recognition of the impropriety of the resolutory action as a question of law. The failure of the lessee to comply with his contractual obligation of not subleasing without due authorization from the lessor, gives the latter the right to seek the resolution of the contract and in exercising such right he should not be subject, in general terms, to the handicap of allowing the lessee to enjoy the property with the additional advantage of not paying any rent or consideration.

In *Igartúa* v. *Ruiz, supra,* it is held that in an action of unlawful detainer for nonpayment of rent the acceptance by the lessor of overdue rent subsequent to the breach of the contract is tantamount to a waiver of the right to evict. This case may be distinguished from the present one. If the unlawful detainer is based on the nonpayment of the rent, the acceptance of the rent is equivalent to an implied recognition that the unlawful detainer is based on a false cause of action. 10 Manresa 644, 5th ed. If the complaint is based on the alleged fact of nonpayment of the rent, the acceptance of the rent destroys the basis of and eliminates the cause of action. The fact of payment is incompatible with the alleged fact of nonpayment. The resolutory action

is waived because the basis itself of the cause of action disappears and not because the acceptance of the payment of the rent gives the contract new life. The contract always remains in force until a final resolutory judgment is rendered, but, in the case of nonpayment, the acceptance of the rent forecloses a resolutory judgment, since a judgment for nonpayment can not be entered. But in the case at bar there is no logical relation of dependence between the payment of the rent and the alleged violation of the contract, that is, the improper sublease.

Nor is there any relation between the case at bar and those cases of unlawful detainer at sufferance and for wrongful occupancy where it has been held that the compensation paid for the enjoyment of the property is equivalent to the payment for its use and not to the payment of rent. *Torres* v. *Biaggi*, 72 P.R.R. 813, and other cases cited in *Igartúa* v. *Ruiz, supra*, at p. 343. In those cases of unlawful detainer at sufferance and for wrongful occupancy it is obvious that a contract no longer existed between the parties when the payments were made, while in the present case the payments were made as an incident to a contract which remained in force. Naturally, even in cases which are not unlawful detainers at sufferance or for wrongful occupancy, if the acceptance of money is made under such circumstances, that, as a matter of fact, it appears that the money is accepted as compensation for the use and not as rent, inherent in an existing contract, such acceptance of money does not entail a waiver of the former violation. *Cf. Igartúa* v. *Ruiz, supra*, at p. 358 and *Vélez* v. *San Miguel*, 68 P.R.R. 534, 542. But this would be a question of fact to be determined in the light of the evidence presented. For the purpose of deciding this case in its present stage, it is sufficient to determine, exclusively as a question of law, that where an unauthorized sublease is alleged as a violation on the part of the lessee of his obligations, as a ground for eviction, the isolated fact by

itself of acceptance of overdue rent subsequent to the alleged breach, is not equivalent to a waiver of the right to evict.

We have pointed out, as the basis for this opinion, that a judgment directing the resolution of a contract of lease should not be retroactive to the extent of abrogating the effectiveness of the contract during the prosecution of the proceeding. The Supreme Court of Spain in its judgment of October 29, 1927, held that a judgment granting an unlawful detainer based on nonpayment was equivalent to a rescission of the contract, with retroactive effect, to the point of rendering applicable § 1295 of the Spanish Civil Code, equivalent to our § 1247, which provides, in part, that rescission necessarily requires the return of the things which were the subject matter of the contract, with their fruits and of the price paid, with interest thereon. The case involved an unlawful detainer for nonpayment of rent and it was held that the lessee against whom judgment was rendered had no right to the fruits yielded during the prosecution of the proceeding. But this judgment was severely criticized by commentator Castán, who thereafter became a judge of the Supreme Court of Spain. He argued that the judgment is erroneous because (1) a judgment of unlawful detainer contemplates the resolution, and not the rescission, of the contract of lease and because (2) the resolution of the contract by judgment is not and should not be retroactive. In connection with the latter judgment Castán, in *Revista de Derecho Privado*, Vol. 15, p. 323, says the following:

"We have serious doubts that this decision was wisely rendered and that the juridical theories on which the Supreme Court based its reversal of the lower judgment, while perhaps rendered in accordance with justice, should be accepted.

"We regret, in the first place, that we can not agree with the theory of our highest Tribunal, that, once the lessor has complied with his obligations, but not so the lessee, it is evident that rescission lies, and not the resolution of the contract. It is true that our Civil Code, as well as the majority of foreign codes, applies a very confused and improper terminology to the

diverse types of annulment of contracts and that, for this reason the jurisprudence has often mistaken rescission for resolution. But it is high time we make a distinction and give each its exact meaning according to the teachings of scientific doctrine. Rescission is the act of annulling a contract whenever injury or damage is caused thereby to the contracting parties or to third persons. Resolution is the annulment owing to the declaratory will of the contract itself, whether this will is expressly stated (as in the case of the resolutory condition) or whether it is implied (as in the case of a judicial order by virtue of the nonperformance of the contract by one of the parties). No matter how inadequate the labels are which may be used by the lawmaker or contracting parties, the unmaking of the contract as a consequence of its violation by one of the parties (whether or not expressly provided and authorized by parties) constitutes, therefore, the resolution and not the rescission of the contract. The hypothesis to which § 1.556 of the Civil Code alludes bears no relation to the rescission by injury, and yet its relationship to the resolution for nonperformance of a bilateral contract is unquestionable. As Manresa says, this Section 'contains an evident application of the principle of § 1.124.' Was it not then logical for the trial judge to deem it sufficient to connect the doctrine of § 1.556 with that of § 1.124? The inapplicability of the provisions contained in the title of the Code concerning the rescission of contracts to cases of resolution (or conventional rescission as it has been sometimes called) is recognized even by the Supreme Court. The judgment of April 24, 1901, holds that § 1.204 'as well as the preceding and following sections refers to contracts subject to rescission pursuant to law and it does not apply to the rescission of those contracts in which the interested parties, in the exercise of their sovereign will in this matter, establish a resolutory condition on whose performance depends the validity of the contract.'

"Leaving aside those considerations of a systematic nature, and whether or not the rescission mentioned in § 1.556 is the true rescission, may full retroactive effect as applied by the Supreme Court on this occassion be admitted? Where any of the parties violates a contract of lease (with or without the express resolutory clause), must the fruits and the rents (in case the latter have been paid) be returned, as sought by the present judgment, and things restored to their former position? We do not agree. The successive nature of the lease forecloses the possibility of applying to it the full retroactive effect that

normally goes with the rescission and the resolution of a contract. How can the material fact of the enjoyment of the property by the lessee be undone? The jurisprudence and scientific doctrine in France and Italy, reject, without hesitation, the abrogation of the effects of the lease, insofar as the period prior to the resolution is concerned. In our own country the commentators who have studied the problem are all of the same opinion."

Castán cites from Colin y Capitant, *Curso Elemental de Derecho Civil*, special edition, Vol. 3, p. 697, to the effect that "when resolution applies to contracts of a continuous period of time such as a lease, it has the particular characteristic that, unlike ordinary resolution, it does not operate retroactively. For example, in cases of rescission of a contract of lease the juridical relations between the lessor and the lessee cease for any future performance but remain in force as to the past."

We do not agree with the judgment of the Supreme Court of Spain quoted. We subscribe to the view of Castán and Colin y Capitant. A judgment of unlawful detainer for nonperformance of the contractual terms is equivalent to a resolution and not to a rescission of the contract and this resolution has no retroactive effect. Therefore, as we have already stated, the payment and acceptance of overdue rent subsequent to the violation of the contract constitute an incident of the contract of lease which remains in force until final judgment is rendered directing the resolution of the contract.

The trial court, therefore, acted correctly in overruling the question of law raised by the lessee-defendant.

The writ issued will be annulled.

Mr. Justice Marrero, Mr. Justice Negrón Fernández and Mr. Justice Belaval did not participate.

Mr. Justice Sifre concurs in the result.